# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **JAKE PETERSON,** on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **TRIMBLE INC.** and **ORACLE CORPORATION,** <br><br> Defendants. | Case No. 1:25-cv-01927 <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Jake Peterson ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Trimble Inc. ("Trimble") and Oracle Corporation ("Oracle" ) (together, "Defendants"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1.       This class action arises from Defendants' failure to protect highly sensitive data.

2.       Defendant Trimble provides transportation solutions "across the transportation sector, including asset maintenance, telematics, carrier and shipper transportation management

systems (TMS), Video Intelligence, Oil & Gas Services, MAPS, Visibility, data analytics and more."[1]

3.      Defendant Oracle is a multinational technology and enterprise software firm.[2]

4.      Upon information and belief, Trimble used Defendant Oracle's EBS system to collect, manage, and store its current and former employees' Private Information.[3]

5.      As such, Oracle stores a litany of highly sensitive personal identifiable information ("PII") about Trimble's current and former employees. But such PII was inadequately protected and thus exposed to cybercriminals in a data breach (the "Data Breach").

6.      It is unknown for precisely how long the cybercriminals had access to Defendants' network before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former employees' PII.

7.      On information and belief, cybercriminals were able to breach Defendants' systems because Defendants failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. In short, Defendants' failures placed the Class's PII in a vulnerable position—rendering them easy targets for cybercriminals.

8.      Plaintiff is a Data Breach victim. He brings this class action on behalf of himself, and all others harmed by Defendants' misconduct.

---

[1] *About*, TRIMBLE, https://transportation.trimble.com/connected-supply-chain-trimbles-vision-future-transportation (last visited Nov. 25, 2025).

[2] *About Oracle*, Oracle, https://www.oracle.com/corporate/ (last visited Nov. 10, 2025).

[3] *See* https://transportation.trimble.com/blog/alk-maps-now-available-within-oracletransportation-management-.

9.      The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former employees' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

10.     Plaintiff, Jake Peterson, is a natural person and a citizen of Colorado. He is domiciled in Castle Rock, Colorado (where he intends to remain).

11.     Defendant Trimble Inc. is incorporated in Delaware with its principal place of business in Westminster, CO. The registered agent for service of process is C T Corporation System at 1999 Bryan St. Ste. 900, Dallas, TX 75210-3136. Defendant Trimble used Oracle's EBS software to store and maintain current and former employees' Private Information.

12.     Defendant, Oracle Corporation, is a stock corporation incorporated in Delaware and with its principal place of business at 2300 Oracle Way, Austin, Texas 78741.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendants are citizens of different states. And there are over 100 putative Class Members.

14.     This Court has personal jurisdiction over Defendants because Oracle Corporation is headquartered in Texas and both Defendants regularly conduct business in Texas and have sufficient minimum contacts in Texas.

15.     Venue is proper in this Court because Defendants' principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

# BACKGROUND

### Defendants Collected and Stored the PII of Plaintiff and the Class

16.    Defendant Oracle is a multinational technology and enterprise software firm.[4]

17.    Upon information and belief, Trimble used Defendant Oracle's EBS system to collect, manage, and store its current and former employees' Private Information.[5]

18.    As part of its business, Defendants receive and maintain the PII of thousands of Trimble's current and former employees.

19.    In collecting and maintaining the PII, Defendants agreed they would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

20.    Under state and federal law, businesses like Defendants have duties to protect current and former employees' PII and to notify them about breaches.

### Defendants' Data Breach

21.    In September 2025, Oracle EBS users received extortion emails from cybercriminals claiming a data breach of Oracle's EBS system.

22.    As a result, Oracle was hacked in the Data Breach—which compromised the data of its enterprise consumers (including Trimble).[6]

23.    Defendants have not yet announced the Data Breach, the dates of the Data Breach, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial

---

[4] *About Oracle*, Oracle, https://www.oracle.com/corporate/ (last visited Nov. 10, 2025).
[5] *Data Breach Notification*, MAINE ATTY GEN (Nov. 7, 2025)
https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-
a1252b4f8318/a69e0001-a0f8-46d9-a49d-cb01159afec2.html.
[6] *Data Breach Notification*, MAINE ATTY GEN (Nov. 7, 2025)
https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-
a1252b4f8318/a69e0001-a0f8-46d9-a49d-cb01159afec2.html.

measures undertaken to ensure such a breach does not occur again. Without these details, Plaintiffs' and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

24.    Indeed, much of the information revealed to the public has come from the hackers themselves. The notorious cybergang, CL0P, has already claimed responsibility for the Data Breach.[7] Twenty-nine alleged EBS users have been listed on the Clop leak website to date, including Trimble:



---

[7] Lawrence Abrams, *Clop Extortion Emails Claim Theft of Oracle E-Business Suite Data*, (Oct. 1, 2025), https://www.bleepingcomputer.com/news/security/clop-extortion-emailsclaim-theft-of-oracle-e-business-suite-data/ (last visited Nov. 19, 2025).

25.     Defendants failed their duties when its inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII. And thus, Defendants caused widespread injury and monetary damages.

26.     Defendants have done little to remedy its Data Breach. True, Defendants have offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class Members for the injuries that Defendants inflicted upon them.

27.     Because of Defendants' Data Breach, the sensitive PII of Plaintiff and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

***CL0P & the Dark Web***

28.     Worryingly, the cybercriminals that obtained Plaintiff's and Class Members' PII appear to be the notorious cybercriminal group "CL0P."[8]

29.     Thus, on information and belief, Plaintiff's and the Class's stolen PII has already been published—or will be published imminently—by CL0P on the Dark Web.

***Plaintiff's Experiences and Injuries***

30.     Plaintiff Jake Peterson is a former employee of Defendant Trimble.

31.     Thus, Defendants obtained and maintained Plaintiff's PII.

32.     As a result, Plaintiff was injured by Defendants' Data Breach.

---

[8] *Oracle E-Business Suite Zero-Day Exploited in Widespread Extortion Campaign*, GOOGLE CLOUD (Oct. 9, 2025) https://cloud.google.com/blog/topics/threat-intelligence/oracle-ebusiness-suite-zero-day-exploitation.

33.     Plaintiff is very careful about the privacy and security of his PII. He does not knowingly transmit his PII over the internet in an unsafe manner.  He is careful to store any documents containing his PII in a secure location.

34.     As a condition of his employment with Trimble, Defendants obtained Plaintiff Peterson's PII. Defendants used that PII to facilitate the employment of Plaintiff, including payroll, and required Plaintiff to provide that PII in order to obtain employment and payment for that employment.

35.     Plaintiff provided his PII to Defendants and trusted the company would use reasonable measures to protect it according to Defendants' internal policies, as well as state and federal law. Defendants obtained and continued to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

36.     Plaintiff reasonably understood that a portion of the funds paid to Defendants (and/or derived from his employment) would be used to pay for adequate cybersecurity and protection of PII.

37.     Thus, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web. Indeed, as noted above, CL0P has taken credit for the breach and listed Trimble as a victim on CL0P's dark web leak site.

38.     Through its Data Breach, Defendants compromised Plaintiff's PII.

39.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach. Plaintiff has spent significant time dealing with the Data Breach—roughly 24 hours of his valuable time Plaintiff otherwise would have spent on

other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

40.    And in the aftermath of the Data Breach, Plaintiff suffered from a spike in spam and scam phone calls.

41.    Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

42.    Because of Defendants' Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

43.    Plaintiff suffered actual injury from the exposure and theft of his PII—which violates his rights to privacy.

44.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendants was required to adequately protect.

45.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendants' Data Breach placed Plaintiff's PII right in the hands of criminals.

46.    Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

47.    Today, Plaintiff has a continuing interest in ensuring that his PII—which, upon information and belief, remains backed up in Defendants' possession—is protected and safeguarded from additional breaches.

***Consumers Prioritize Data Security***

48.     In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[9] Therein, Cisco reported the following:

a.     "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[10]

b.     "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[11]

c.     89% of consumers stated that "I care about data privacy."[12]

d.     83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[13]

e.     51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[14]

f.     75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[15]

---

[9] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).
[10] *Id.* at 3.
[11] *Id.*
[12] *Id.* at 9.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 11.

*Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft*

49.    Because of Defendants' failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.    loss of the opportunity to control how their PII is used;

b.    diminution in value of their PII;

c.    compromise and continuing publication of their PII;

d.    out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e.    lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f.    delay in receipt of tax refund monies;

g.    unauthorized use of their stolen PII; and

h.    continued risk to their PII—which remains in Defendants' possession—and is thus as risk for futures breaches so long as Defendants fails to take appropriate measures to protect the PII.

50.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

51.     The value of Plaintiff and Class's PII on the black market is considerable. Stolen PII trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

52.     It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

53.     One way that criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—first the stolen PII, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

54.     The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

55.     In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

56.     Defendants disclosed the PII of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the PII of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and

fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

57.    Defendants' failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendants Knew—Or Should Have Known—of the Risk of a Data Breach***

58.    Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

59.    In 2024, a record 3,158 data breaches occurred—exposing approximately 1,350,835,988 sensitive records (i.e., 211% increase year over year).[16]

60.    Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[17]

61.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendant.

---

[16] *2024 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.
[17] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

***Defendants Failed to Follow FTC Guidelines***

62.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

63.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[18]  The FTC declared that, *inter alia*, businesses must:

    a.     protect the personal customer information that they keep;

    b.     properly dispose of personal information that is no longer needed;

    c.     encrypt information stored on computer networks;

    d.     understand their network's vulnerabilities; and

    e.     implement policies to correct security problems.

64.     The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

65.     Furthermore, the FTC explains that companies must:

    a.     not maintain information longer than is needed to authorize a transaction;

    b.     limit access to sensitive data;

    c.     require complex passwords to be used on networks;

    d.     use industry-tested methods for security;

    e.     monitor for suspicious activity on the network; and

---

[18] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

       f.      verify that third-party service providers use reasonable security measures.

66.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

67.    In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

68.    Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

69.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

70.    Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST

Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

71.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

72.    Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII was compromised in the Data Breach that impacted Trimble in September 2025, including all those individuals who received notice of the breach.

73.    Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendants has a controlling interest, any Defendants officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

74.    Plaintiff reserves the right to amend the class definition.

75.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

76.     <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendants' custody and control. After all, Defendants already identified some individuals and sent them data breach notices.

77.     <u>Numerosity</u>. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least thousands of individuals.

78.     <u>Typicality</u>. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

79.     <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

80.     <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a.     if Defendants had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

b.     if Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.     if Defendants were negligent in maintaining, protecting, and securing PII;

d.      if Defendants breached contract promises to safeguard Plaintiff and the Class's PII;

e.      if Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

f.      if Defendants' Breach Notice was reasonable;

g.      if the Data Breach caused Plaintiff and the Class injuries;

h.      what the proper damages measure is; and

i.      if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

81.      <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendants would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

82.      Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

83. Plaintiff and the Class (or their third-party agents) entrusted their PII to Defendants on the premise and with the understanding that Defendants would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

84. Defendants owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

85. Defendants have full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

86. Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices. After all, Defendants actively sought and obtained Plaintiff and Class Members' PII.

87. Defendants owed—to Plaintiff and Class Members—at least the following duties to:

    a. exercise reasonable care in handling and using the PII in its care and custody;

    b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

    c. promptly detect attempts at unauthorized access;

    d. notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII.

88.     Thus, Defendants owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

89.     Defendants also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

90.     Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

91.     Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class (or their third-party agents) entrusted Defendants with their confidential PII, a necessary part of obtaining services from Defendant.

92.     The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendants hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII — whether by malware or otherwise.

93.     PII is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

94.    Defendants improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

95.    Defendants breached these duties as evidenced by the Data Breach.

96.    Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by:

a.    disclosing and providing access to this information to third parties and

b.    failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

97.    Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

98.    Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

99.    As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

100.    And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

101.    Defendants' breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CAUSE OF ACTION**
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

102.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

103.    Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

104.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff and the Class Members' sensitive PII.

105.    Defendants breached their respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

106.    Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and

amount of PII Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

107.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

108.    But for Defendants' wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

109.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that Defendants was failing to meet their duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

110.    Defendants' various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

111.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

112.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

113.    Plaintiff and Class Members either directly contracted with Defendants or Plaintiff and Class Members were the third-party beneficiaries of contracts with Defendant.

114.    Plaintiff and Class Members (or their third-party agents) were required to provide their PII to Defendants as a condition of receiving employment provided by Trimble. Plaintiff and Class Members (or their third-party agents) provided their PII to Defendants or its third-party agents in exchange for Trimble's employment.

115.    The contracts entered into by Plaintiff's and Class Members' agents (for example, their employers), were made for the direct benefit of Plaintiff and the Class.

116.    Plaintiff and Class Members (or their third-party agents) reasonably understood that a portion of the funds derived from their labor would be used to pay for adequate cybersecurity measures.

117.    Plaintiff and Class Members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendants' duties under state and federal law and its internal policies.

118.    Plaintiff and the Class Members (or their third-party agents) accepted Defendants' offers by disclosing their PII to Defendants or their third-party agents in exchange for employment.

119.    In turn, and through internal policies, Defendants agreed to protect and not disclose the PII to unauthorized persons.

120.    Implicit in the parties' agreement was that Defendants would provide Plaintiff and Class Members (or their third-party agents) with prompt and adequate notice of all unauthorized access and/or theft of their PII.

121.    After all, Plaintiff and Class Members (or their third-party agents) would not have entrusted their PII to Defendants (or their third-party agents) in the absence of such an agreement with Defendant.

122.    Plaintiff and the Class (or their third-party agents) fully performed their obligations under the implied contracts with Defendant.

123.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

124.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

125.    Defendants materially breached the contracts it entered with Plaintiff and Class Members (or their third-party agents) by:

a.    failing to safeguard their information;

b.    failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c.    failing to comply with industry standards;

d.    failing to comply with the legal obligations necessarily incorporated into the agreements; and

e.    failing to ensure the confidentiality and integrity of the electronic PII that Defendants created, received, maintained, and transmitted.

126.    In these and other ways, Defendants violated their duty of good faith and fair dealing.

127.    Defendants' material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

128.    And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

129.    Plaintiff and Class Members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendants' conduct.

**FOURTH CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

130.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

131.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

132.    Defendants owed a duty to its current and former employees, including Plaintiff and the Class, to keep this information confidential.

133.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' PII is highly offensive to a reasonable person.

134.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

135.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

136.    By intentionally failing to keep Plaintiffs' and Class Members' PII and PHI safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendants intentionally invaded Plaintiffs' and Class Members' privacy by:

    a.    Intentionally and substantially intruding into Plaintiffs' and Class Members' private affairs in a manner that identifies Plaintiffs and Class Members and that would be highly offensive and objectionable to an ordinary person;

    b.    Intentionally publicizing private facts about Plaintiffs and Class Members, which is highly offensive and objectionable to an ordinary person; and

    c.    Intentionally causing anguish or suffering to Plaintiffs and Class Members.

137.    As the Restatement explains, as used throughout the Restatement of Torts, intent "has reference to the consequences of an act rather than the act itself." Restatement (Second) of Torts § 8A, cmt. A (1964). "Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." *Id.* cmt. B.

138.    Indeed, given the foreseeability of the harms inherent in data breaches and the ubiquitous nature of data breaches, Defendants were substantially certain that their failure to implement reasonable cybersecurity standards would lead to an invasion of Plaintiffs' privacy.

139. Defendants knew that an ordinary person in Plaintiffs' or Class Members' position would consider the exposure of their PII and PHI to be highly offensive and objectionable.

140. Defendants invaded Plaintiffs' and Class Members' right to privacy and intruded into Plaintiffs' and Class Members 'private affairs by intentionally misusing and/or disclosing their PII and PHI without their informed, voluntary, affirmative, and clear consent.

141. Moreover, given that stolen PII and PHI is then publicized and traded on the dark web and through Telegram channels, Defendants knew or were substantially certain that their failure to implement reasonable cybersecurity safeguards would lead to the publication of Plaintiffs' and the Class Members' PII and PHI to a large group of the public and/or to a large group of individuals who are in a special relationship with Plaintiffs' and the proposed Class Members, in that those individuals are exactly the type of people that Plaintiffs' and the Class Members have a special interest in ensuring their PII and PHI is kept confidential from given that those individuals are known identity thieves and fraudsters.

142. As a proximate result of Defendants' acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

143. And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

144. Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendants with their inadequate cybersecurity system and policies.

145.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the PII of Plaintiff and the Class.

146.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class Members, also seeks compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

147.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

148.    This claim is pleaded in the alternative to the breach of implied contract claim.

149.    Plaintiff and Class Members (or their third-party agents) conferred a benefit upon Defendant. After all, Defendants benefitted from (1) using their PII to facilitate employment, and (2) using their labor to derive profit.

150.    Defendants appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

151.    Plaintiff and Class Members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendants' duties under state and federal law and its internal policies.

152.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

153.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendants instead calculated to avoid its data security

obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

154.    Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and Class Members' (1) PII and (2) employment because Defendants failed to adequately protect their PII.

155.    Plaintiff and Class Members have no adequate remedy at law.

156.    Defendants should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

## SIXTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

157.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

158.    Given the relationship between Defendants and Plaintiff and Class Members, where Defendants became guardian of Plaintiff's and Class Members' PII, Defendants became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff and Class Members' PII; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

159.    Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendants' relationship with them—especially to secure their PII.

160.    Because of the highly sensitive nature of the PII, Plaintiff and Class Members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendants' position, to retain their PII had they known the reality of Defendants' inadequate data security practices.

161.    Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class Members' PII.

162.    Defendants also breached their fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

163.    As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendants and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.    Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

E.      Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

F.      Awarding attorneys' fees and costs, as allowed by law;

G.      Awarding prejudgment and post-judgment interest, as provided by law;

H.      Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I.      Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.


Dated: November 25, 2025          By: */s/ Raina C. Borrelli*
                                      Raina C. Borrelli
                                      **STRAUSS BORRELLI PLLC**
                                      One Magnificent Mile
                                      980 N Michigan Avenue, Suite 1610
                                      Chicago IL, 60611
                                      Telephone: (872) 263-1100
                                      Facsimile: (872) 263-1109
                                      raina@straussborrelli.com

                                      J. Gerard Stranch, IV*
                                      Grayson Wells*
                                      **STRANCH, JENNINGS & GARVEY, PLLC**
                                      The Freedom Center
                                      223 Rosa L. Parkes Avenue, Suite 200
                                      Nashville, TN 37203
                                      Tel : (615- 254-8801
                                      gstranch@stranchlaw.com
                                      gwella@stranchlaw.com

                                      **Pro hac vice* forthcoming

                                      *Attorneys for Plaintiff and the Proposed Class*